---

No. 95-1584NI

---

Leona M. Adams; Richard P.                *
Boecher; William Borst; Denise            *
Campbell; David A. Christensen;           *
Lona Clingenpeel; Paul G. Dicks;*
Mary F. Girard; Mary Godbersen;           *
Connie Godfrey; Walt R. Hansen;           *
Christopher Hast; Steven                  *
Hayworth; William E. Ingalls;             *
Melvin J. Johnson; Mavis Juarez;*
Steve Kroll; Lawrence Lacek;              *
Joann C. Lussier; Charmalee               *
McFarland; Darlene McKinley;              *
Joyce Montange; Donna Ozburn;             *
Jessie Roy; Mary A. Salisbury;            *
David R. Shute; Darlene                   *
Stevenson; Denise Stroman;                *
Kathy Stroman; Pam Sullivan;              *   Appeal from the United States
Joyce E. Swanson; Patricia                *   District Court for the Northern
Thompson; Georgia R. Twinn;               *   District of Iowa.
Peggy Sue Verzani; Teresa                 *
Williams; Kellie Worden; Ken              *
Zentz; Rose Zimmerman,                     *
                                          *
        Plaintiffs-Appellants,*
                                          *
    v.                                    *
                                          *
Erwin Weller Company, also                *
known as Weller Plastics                  *
Company; John F. Heinz, III;              *
Thomas Ford;                              *
                                          *
        Defendants,                       *
                                          *
Westinghouse Credit Corporation,*
                                          *
        Defendant-Appellee.       *

---

Submitted:  October 18, 1995

Filed:  July 1, 1996

---

Before FAGG, HEANEY, and HANSEN, Circuit Judges.

---

FAGG, Circuit Judge.

In this case, we must decide whether a lender's involvement with its borrower's business affairs makes the lender an employer under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (1994) (WARN).

Beginning in 1988, Westinghouse Credit Corporation (WCC), a commercial lender, made a series of secured loans to the Erwin Weller Company (EWC). The loans were for the purchase of a plastic bottle manufacturing plant in Sioux City, Iowa, for expansion of EWC's business operations elsewhere, and for working capital for EWC's daily operations. Almost at once, EWC experienced serious financial difficulties, and although the parties worked conscientiously to revive EWC's fortunes, nothing worked. In February 1991, WCC refused to extend additional credit to its insolvent borrower and decided to call the defaulted loans. After learning that WCC would no longer provide EWC's financing, EWC closed the Sioux City manufacturing plant without giving its employees any advance notice.

Afterwards, a class of former EWC employees brought this WARN action against WCC. The employees contend WCC was their employer when the plant closed, see id. § 2101(a)(1), and owes them backpay and benefits because it did not give them sixty days written notification before closing the plant, id. § 2104(a)(1). The district court concluded WCC was not an employer under WARN and granted WCC's motion for summary judgment. The employees appeal, and we affirm.

We review the district court's grant of summary judgment de novo, and like the district court, we view the record in the light most favorable to the nonmoving party. Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1413 (8th Cir. 1996). The existence of some factual disputes does not preclude

summary judgment, however, unless the factual disputes could actually affect the outcome of the case.  Id.; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).  Having reviewed the record with these principles in mind, we conclude there are no disputed issues of material fact for trial.

Although § 2101(a)(1) does not tell us what it takes to be an employer subject to WARN, we agree with the employees' contention that WARN's obligations can apply to a secured lender.  Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572 v. Weslock Corp., 66 F.3d 241, 244 (9th Cir. 1995).  Contrary to the employees' view, the mere fact the loan documents give some control over the borrower to protect the lender's security interest does not automatically make the lender a WARN employer.  Id.  A lender can legitimately restrict its borrower's financial and business activities, monitor the borrower's business doings, and participate in the borrower's management, to protect the lender's investment and the collateral securing its loan.  See id. at 245; Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp., 483 F.2d 1098, 1105 (5th Cir. 1973); Chicago Mill & Lumber Co. v. Boatmen's Bank, 234 F. 41, 46 (8th Cir. 1916).  Understandably, lenders who loan large sums of money must be afforded substantial leeway in pursuing their bargained-for rights with a borrower in financial distress.  Only when a lender becomes so entangled with its borrower that it has assumed responsibility for the overall management of the borrower's business will the degree of control necessary to support employer responsibility under WARN be achieved.  Thus, we agree with the Ninth Circuit that a lender only becomes a WARN employer "[when] the [lender] operates the [borrower's] asset[s] as a `business enterprise' in the `normal commercial sense.'"  Weslock Corp., 66 F.3d at 244 (quoting 54 Fed. Reg. 16,045 (1989)).  In this case, we need not decide how much operational decisionmaking it takes for a lender to be treated as a WARN employer because the record does not show the relationship between EWC and WCC was anything more than a debtor-creditor relationship.

EWC's employees point to several facts they claim establish WCC participated in the operational management of the Sioux City plant. First, the employees contend WCC crossed the line between lender and employer because WCC dominated EWC's financial affairs by virtue of various restrictions in the loan documents. Among other restrictions, the employees mention WCC's extensive security interest in EWC's assets, the lockbox arrangement for EWC's cash receivables, the revolving line of working capital for EWC's daily operations, and the provisions enabling WCC to monitor EWC's assets, inventory, and expenditures, and banning changes in EWC's capital structure. Having reviewed the loan documents, we conclude none of the restrictions imposed on EWC's activities were unusual for a lender loaning over eighteen million dollars. Although WCC had significant leverage over EWC, the loan documents make clear that WCC neither had the right to manage EWC's business activities nor to tell EWC how to spend its working capital. Like the lender in Weslock Corp., WCC's use of legitimate financial controls to protect its security interest does not make WCC an employer under WARN. Weslock Corp., 66 F.3d at 245.

Second, the employees contend WCC should be considered their employer because "WCC's influence affected the management of the corporation." Faced with a precarious financial situation, EWC asked WCC for additional working capital and a more liberalized payment schedule on its loans. In response, WCC expressed concerns about the effectiveness of EWC's management, and suggested that EWC hire a crisis-management consultant to help improve the company's financial performance. Acting on its own, EWC replaced its president with one of the consultants recommended by WCC. Based on the consultant's evaluation of EWC's future prospects, WCC granted EWC's request for additional working capital. Although the employees contend this interplay shows WCC was actually in control of EWC's business operations, these actions were nothing more than a major lender's attempt to work with a troubled borrower and nurse it back to financial health. Contrary to the employees' view, WCC

-4-

did not become a WARN employer because it proposed methods to improve EWC's profitability, suggested new management, and stepped up its verifications to keep track of EWC's deteriorating financial condition.  Major lenders do these sort of things all the time.  Indeed, lenders often make suggestions to troubled borrowers and, unlike this case, the suggestions are frequently coupled with financial threats.

Although WCC's position as EWC's financial life-line undoubtedly gave it the capacity to exert influence over EWC's decisions, this power is inherent in any debtor-creditor relationship and its exercise does not translate into decision-making control for the purposes of WARN's employer rule.  We thus reject the employees' suggestion that a major lender must timidly sit on the sidelines and watch its loan unravel and its security erode, or otherwise incur WARN responsibility.  WCC's challenged conduct was entirely "consistent with the type of control a secured creditor legitimately may exercise over a defaulting debtor to protect [its security interest]."  Weslock Corp., 66 F.3d at 245.

Finally, the employees contend WCC became their employer when it decided to cut off EWC's supply of working capital and call its loans, and thus effectively closed the Sioux City plant.  According to the employees, "WCC was fully aware that its funding was necessary for [EWC's] daily operations [and] without these funds EWC would not continue business operations nor meet payroll, and [EWC] would have to close."  Even so, a lender's refusal to loan additional working capital to an insolvent and delinquent borrower who cannot repay over eighteen million dollars in secured debt does not make the lender an employer for WARN purposes.  See 29 U.S.C. § 2101(a)(1).  The record clearly shows EWC made the decision to close the plant and terminate the employees' jobs.  Further, WCC never assumed an employer-employee relationship by hiring, firing, paying, or supervising any of EWC's employees.  After EWC closed the plant, WCC took possession of its collateral and never reopened

the plant for business.  WCC lost about seven million dollars on its loan with EWC.

We conclude WCC never operated EWC's Sioux City plant as a business enterprise in the normal commercial sense.  WCC exercised the prerogatives of a secured lender and never became a WARN employer.  We thus affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.