**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0623n.06
Filed: July 26, 2005

**No. 04-3348**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MIKE SMITH,                              *

         *

         Plaintiff-Appellant,        *

         *

v.                                    * **ON APPEAL FROM THE UNITED**

         * **STATES DISTRICT COURT FOR THE**

AJAX MAGNATHERMIC CORP.; CREDIT    * **NORTHERN DISTRICT OF OHIO**

SUISSE FIRST BOSTON; CAPITAL       *

D'AMERIQUE CDPQ; BNP PARIBAS; PB    *

CAPITAL CORP. (formerly BHF (USA)     * **O P I N I O N**

CAPITAL CORP.); BALANCE HIGH YIELD   *

FUND II, LTD.; CAISSE DE DEPOT ET     *

PLACEMENT DU QUEBEC; ROBERT FILION   *

STRATEGIE FINANCIERE, INC.; PACIFIC    *

INVESTMENT CO.; DEUTSCHE FINANCIAL    *

SERVICES; KEY BANK; and CITICORP      *

VENTURE CAPITAL, LTD.,              *

         *

         Defendants-Appellees.       *

_____/

**BEFORE:**    **CLAY, GILMAN, and COOK, Circuit Judges.**

      **CLAY, Circuit Judge.** Plaintiff Mike Smith appeals the dismissal under Fed. R. Civ. P.

12(b)(6) of his claim that a consortium of companies that made significant loans to his employer,

Ajax Magnathermic, assumed sufficient control of Ajax such that when Ajax terminated Smith and

several of his co-workers without the notice required by the Worker Adjustment and Retraining Act

of 1988, 29 U.S.C. § 2101 *et seq*. (the "WARN Act"), these companies (the "Lender Defendants")

were liable for the WARN Act violation as well. Smith also appeals the dismissal of his claim that

the Lender Defendants breached his severance agreement. For the reasons that follow, we affirm

the dismissal of the latter claim but reverse the dismissal of the former claim and remand for further proceedings.

## BACKGROUND

Because the case comes to us in the posture of a dismissal under Rule 12(b)(6), we take the allegations in the complaint as true. *E.g.*, *Golden v. City of Columbus*, 404 F.3d 950, 959 (6th Cir. 2005). Those allegations, so far is as relevant to this appeal, are as follows. Smith worked for Ajax Magnathermic Corporation, a manufacturer of induction melting and heating equipment, in Warren, Ohio. Toward the end of 1998 and the beginning of 1999, the Lender Defendants – Credit Suisse First Boston, BNP Paribas, PB Capital Corporation, Balance High Yield Fund II, Ltd., Caisse de Depot et Placement du Quebec, Deutsche Financial Services, and Key Bank – made a series of loans to Citicorp Venture Capital, Ltd. (CVC), Ajax's parent corporation. CVC did not repay the loans promptly and, according to the complaint, the Lender Defendants retained a consulting firm called Sutter Group whose task was to "investigate the viability of Ajax continuing as a viable business." The complaint alleges that the Lender Defendants later "inserted" Sutter Group to manage Ajax.

Around October 2001, the Lender Defendants, in the complaint's words, "authorized actions to arrange for the prospective sale of Ajax" and hired another consulting firm, Gordian Group, LP, "to find individuals or companies interested in purchasing Ajax." Meanwhile, since at least May 2001, Ajax itself had been "actively seeking new capital and/or a new owner." During the period of spring 2001 to spring 2002, the Lender Defendants were satisfied to see whether Ajax would succeed in its quest for capital and declined to "take action against Ajax on past due debts owed them." This forbearance ceased at some point prior to May 9, 2002. On May 9, 2002, Smith and

55 of his co-workers were terminated; Ajax apparently cited the Lender Defendants' decision to collect on the loans as the event that precipitated the termination. Ajax did not give the employees it terminated any advance notice.

On May 24, 2002, Smith filed a complaint in the Northern District of Ohio against Ajax and the Lender Defendants on behalf of himself and an asserted class of former Ajax employees. The complaint alleged violations of the WARN Act, 29 U.S.C. §§ 2101-2109, and breaches of Ajax's severance policies. The Lender Defendants moved to dismiss under Rule 12(b)(6) on the ground that they were not the plaintiffs' employer. *See* 29 U.S.C. § 2102(a)(1). On March 4, 2003, the district court granted the motion to dismiss in a written order. Smith never sought class certification, but on March 21, 2003, he moved for summary judgment against Ajax. Smith's motion was unopposed; the district court granted it on April 8, 2003, and entered judgment in Smith's favor on September 23, 2003. Smith obtained a default judgment against CVC on March 9, 2004, and appealed the district court's order granting the Lender Defendants' motion to dismiss the next day.[1]

## STANDARD OF REVIEW

We review the dismissal of a claim under Rule 12(b)(6) *de novo*. *E.g.*, *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999). The allegations in the complaint are assumed to be true and the question is whether "relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk v. City*

---

[1] Smith's two prior attempts to appeal the order (on March 31, 2003 and October 14, 2003) were dismissed by this Court for lack of jurisdiction because the judgment in the case was not yet final as to all defendants.

*of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quotation marks and citation omitted); *see also*

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

### A. The WARN Act Claim

Under the WARN Act, "[a]n employer shall not order a plant closing or mass layoff until the

end of a 60 day period after the employer serves written notice of such an order" to either the

employees or their representatives. 29 U.S.C. § 2102(a)(1). The Act defines an employer as "any

business enterprise" that employs at least 100 full-time employees or at least 100 employees who

together work at least 4,000 hours per week, exclusive of overtime. *Id*. § 2101(a)(1). There is no

dispute that Ajax constitutes an "employer" under this definition. The WARN Act makes employers

liable for backpay and back benefits if they fail to provide the required 60 day notice. *Id*. § 2104(a).

Having obtained a judgment against Ajax under this section, Smith now seeks to hold the Lender

Defendants liable as well. The issue presented is whether these companies, while obviously not

Smith's actual employer, may nonetheless be liable under the WARN Act as affiliates of Ajax. The

district court, relying on what appears to be the entirety of on-point case law in this area, dismissed

Smith's claim against the Lender Defendants because "[t]he actions attributed to the Lender

Defendants in the complaint are precisely the type of activities which Courts [considering WARN

Act lender-liability claims] have approved for creditors seeking to protect their investments."

Although neither the WARN Act itself nor the Department of Labor's regulations (the "DOL

Regulations") promulgated to implement it explicitly authorize suits against lenders, *see Pearson*

*v. Component Tech. Corp.*, 247 F.3d 471, 491-92 (3d Cir. 2001), three circuits have held that a

lender may be liable under the WARN Act if its relationship with the indebted employer meets certain criteria. *Pearson*, 247 F.3d 471 (3d Cir. 2001); *Adams v. Erwin Weller Co.*, 87 F.3d 269 (8th Cir. 1996); *Chauffers, Sales Drivers, Warehousemen & Helpers Union Local 572 (AFL-CIO) v. Weslock Corp.*, 66 F.3d 241 (9th Cir. 1995).

In *Weslock*, the Ninth Circuit relied on a Department of Labor commentary ("DOL commentary") discussing potential WARN liability for a fiduciary (trustee) in an employer's bankruptcy proceeding, 54 Fed. Rev. 16,045 (1989), and concluded:

> . . . WARN's obligations indeed can apply to a secured creditor, but only where the creditor operates the debtor's asset as a 'business enterprise' in the 'normal commercial sense.' On the other hand, where the creditor does no more than exercise that degree of control over the debtor's collateral necessary to protect the security interest, and acts only to preserve the business asset for liquidation or sale, the notice requirement of WARN will not apply 'precisely because the [defendant has not] continue[d] the business in operation.'

66 F.3d at 244 (quoting DOL commentary). Applying these principles, the Ninth Circuit affirmed a grant of summary judgment to the lender because there was no evidence that its representatives were "involve[d] in the functional operations of the Weslock facility," i.e., that they participated "in decisions concerning the plant's production output, the marketing of the plant's product, or the plant's employment practices." *Id*. at 244-45.

In *Adams*, the next case to address lender liability under the WARN Act, the Eighth Circuit rejected similar claims to those raised by the plaintiffs in *Weslock*. 87 F.3d at 272-73. In the court's view, the defendant-lender's security interest in the debtor-employer's assets, its influence over the employer's financial decisions during the period of delinquency, and its demand that the employer hire a consultant to help the employer improve its financial performance, did not suggest that the

lender was "actually in control of the [employer's] business operations." *Id.* at 272. Rather, these were indicia of a "major lender's attempt to work with a troubled borrower and nurse it back to financial health." *Id.* Following the Ninth Circuit's lead, the Eighth Circuit held that for a lender to face WARN liability, it must have a hand in the employer's "operational decisionmaking," indeed it must have "become[] so entangled with its borrower that it has assumed responsibility for the overall management of the borrower's business." *Id.* (citing *Weslock*, 66 F.3d at 244).

In *Pearson*, the Third Circuit stressed that in assessing a WARN Act claim against a lender, "there must . . . be a functional assessment of the amount of control exercised by the lender." 247 F.3d at 495. Furthermore, the *Pearson* court stated: "We agree with the Ninth Circuit that a prerequisite for lender liability is that whatever responsibility the lender may have assumed for the borrower's business, such responsibility must have been for the 'ordinary operation' of the business. Thus, as in bankruptcy law, the lender may not be liable under WARN for 'winding up' or foreclosure activities not taken as part of an effort to operate the business in the 'normal commercial sense' . . . ." *Id.* at 497 (quoting *Weslock*, 66 F.3d at 245).

In contrast to the three cases just discussed, each of which affirmed grants of summary judgment to lender-defendants, this case comes to us in the very early going, such that we must assume all of Smith's allegations to be true and ask whether "relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (citation omitted); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under the standards articulated by the courts in *Weslock*, *Adams*, and *Pearson*, we see at least one allegation in the complaint sufficient to

withstand a dismissal under Rule 12(b)(6), namely, that the Lender Defendants "inserted" a consulting firm called the Sutter Group to "manage" Ajax. This allegation could reasonably support the conclusion that the Lender Defendants were "operat[ing] [Ajax] as a 'business enterprise' in the 'normal commercial sense,'" *Weslock*, 66 F.3d at 244 (quoting DOL Commentary), because a fact-finder could reasonably infer that by appointing new management the Lender Defendants had "become[] so entangled with [their] borrower that [they] ha[d] assumed responsibility for the overall management of the borrower's business." *Adams*, 87 F.3d at 872 (citing *Weslock*, 66 F.3d at 244); *see also Pearson*, 247 F.3d at 495-97.

Consequently, we think it inappropriate to dismiss Smith's WARN Act claim for failure to state a claim upon which relief can be granted. The better course at this early stage is to permit Smith to proceed on his WARN Act claim against the Lender Defendants. After discovery is complete the record may support a grant of summary judgment in favor of the Lender Defendants, but we cannot say that Smith's claim is without merit solely by reference to his complaint.

## B.    The Severance Agreement Claim

The district court properly dismissed Smith's severance agreement claim against the Lender Defendants. As the district court observed, the portion of the complaint relevant to this claim makes no mention of the Lender Defendants and instead references only the "defendant employer," a term earlier defined to be Ajax. Indeed, the complaint does not even allege that any of the Lender Defendants were parties to the severance agreement that Smith claims was breached. Smith's suggestion to this Court that the Lender Defendants may be liable under the quasi-contractual theory of unjust enrichment should have been made in his complaint.

## **CONCLUSION**

The dismissal of Smith's severance agreement claim is affirmed, the dismissal of his WARN

Act claim is reversed, and the case is remanded for further proceedings consistent with this opinion.